Christine, I think it's Bube and Connie Hendrington v. Aspirus Hospital. Good afternoon. We'll just wait for the room to quiet down. All right, I think the class change has completed. Mr. Erickson, you may proceed. Once again, good afternoon. May it please the court counsel. My name is Greg Erickson. I'm from Mormon Cardinal and Erickson, and I'm representing appellants Christine Bube and Connie Hendrington. The single issue that is before the court today is whether or not a district court may dismiss a complaint under Rule 12b-6 standards when the complaint in its terms has pledged sincerely held religious beliefs that conflict with the employer's vaccine mandate. Aspirus Hospital had a vaccine mandate for its employees similar to hospitals and health care associations all across this country. The distinction between the Aspirus Hospital vaccine mandate exemption process and virtually any process that I've seen, and I have 150 plaintiffs in cases against a number of health care systems, so I've seen quite a few of these. The massive distinction between Aspirus's policy and policies throughout other health care institutions is the fact that Aspirus decided to make limits on its employees' ability to successfully plead their religious conflicts with their vaccine mandate. And they're stated in our reply brief, and I'll give you a few examples. Just in the interest of time, Mr. Erickson, can I just ask you a very specific question on that? I don't have a hard time following that, because when I look at the initial exemption requests that were submitted by both of the clients here, and then there's this kind of, what do you call it, like an appeal, an administrative appeal or administrative review? Seems as clear as day to me what they're asking for. So I don't understand the point you're making about Aspirus's process being deficient in some way. Well, let me explain. First of all, the process only allowed employees to make one religious conflict with the vaccination requirement. There's absolutely nothing in the law that would allow them to do that. What's the problem? Say it again. The Aspirus policy specifically said that they are only able to cite one religious conflict with vaccination. That's an extremely important distinction between their policy and any other health care facility's policy. Another problem with their process is they made specific references to not use references to scripture unless you were able to clearly and concisely connect them with their objections to vaccination. Well, Your Honor, the Bible is a 2,000 to 5,000-year-old text that in essence existed long before vaccinations were even contemplated, what, 200 years ago? So when they make statements like that in their policies, it makes it extremely difficult for employees to properly craft their religious exemption requests. This is where we're on two different wavelengths here. Because when I read the two exemption requests that were submitted here, they're clear. Religion is right in the text of them. People articulate why it is they have a religious objection to the vaccine. It's odd to me that you're starting your argument. We were together a few months ago, you'll remember. It's odd to me that you're starting this argument with a procedural point about Aspirus' process as opposed to what I understood from your brief was read the exemption requests. They're absolutely religious objections. 100 percent, Your Honor. But the district court, when it absolutely parsed these religious exemption requests into little pieces and then made conclusions, factual conclusions, which they are prohibited from doing under Rule 12 in relation to these exemption requests, in support of its decision to dismiss, I just feel that that's completely inappropriate when their policy restricted the effectiveness of the requests. And then, well, obviously if this court believes that they clearly and concisely put their religious conflict with vaccination in their… You could submit a one-line email articulating your religious objection to a COVID vaccine. You'd say they're absolutely impossible. You can't say enough in one line. But that's not at all what has happened here. Well, Your Honor, what about the fact that they attacked the fetal cell arguments with misinformation in their communications with their employees? And that is specifically referenced in our complaint with the letter from the Thomas More Society that we provided. The problem with your fetal cell or your client's issue with it is that the exemption requests and the related appellate communications don't reference that objection, an objection on that basis anyway. That was – the fetal cell objection was in the complaint for Ms. Hedrington. We pled it. You mean the – oh, the district court complaint? Yes. Oh, okay. Fair enough. But what you're alleging here is that through this exemption request process, right, there was religious discrimination that occurred. Correct. Okay. And my only point is that in the communications that occurred to the employer through the exemption request outlet, there's plenty of references to religion but not about fetal cells. Because if the employer says, I'm not going to listen to any fetal cell arguments in their communication to you, obviously that's going to have a material effect on the party's ability to make their requests. Mr. Erickson, I want to pick up on something you said earlier. Adieye says can't be surgical in the way these things are looked at. 100 percent. Reid is the other side. Reid is saying, wait a minute, how do we protect against someone saying that there's not sincerely held religious belief? I think it's what White Walls and Shades has mentioned. Where are we to draw that line as to every belief or preference not becoming protected religious versus what is appropriately protected religious? Your Honor, I say for the Rule 12 inquiry, which is what we're dealing with here, when we have employees that specifically plead religious beliefs that conflict with the vaccination requirement, for Rule 12, the analysis ends just right there. Perhaps this analysis that the district court engaged in is appropriate at summary judgment. Okay. Obviously, it's appropriate at trial. But certainly not in the Rule 12 context when you have a completely and fundamentally undeveloped factual record. It's virtually impossible to properly evaluate an employee's religious beliefs when there was no interactive process that occurred between the employer and the employees, which is required under the – I think it's City v. Chicago, Porter v. City of Chicago. The Seventh Circuit specifically said that employers are required to interact directly with their employees. When they don't do that and the employee pleads – Title VII or ADA?  Go ahead. This was a – okay. So when an employer makes a decision to terminate an employee based on a religious exemption request that specifically targets their religious beliefs and the vaccination requirement, that should survive Rule 12. I'm going to reserve the rest of my time for rebuttal. Thank you.  Good morning, Your Honor. Thank you. My name is Chad Levenitz, and I represent Aspiris Hospital, Incorporated in this matter. The appellants in this case requested that they be exempt or be excused from Aspiris' mandatory vaccination policy. The basis for this excuse was on medical or personal reasons, not based on sincerely held religious beliefs. Therefore, there is no facially plausible claim that was articulated either in the original exemption request or in the complaint. So, Levenitz, if there are religious reasons given, bodily autonomy reasons given, efficacy reasons given, a third, a third, a third, does that automatically disqualify that from being an exemption? Not automatically, Your Honor. What percentage, then, must be religious to invoke the exception? I don't know. I think it's a sliding scale, but if you look at Ashcroft, and it's a, you have to engage in a specific context analysis, and you have to really look at the facts and the submissions before you in each instance. In this case, you can see, as opposing counsel pointed out, Aspiris was really focused on providing guidance to their employees on how to properly put in or submit a religious exemption request. If you look at both Ms. Hedrington's and Ms. Bouvet's original exemption requests, together with their appeals, they start out by focusing on the personal beliefs or the medical beliefs. For example, I believe Ms. Hedrington starts out, it's my body, my choice. No one is going to tell me what to do. In the case of Ms. Bouvet, she says, I'm a practicing Catholic, but then she goes in about how she's already obtained the COVID vaccine, and she has antibodies, and it's unnecessary for her to receive the vaccine. These are all personal medical beliefs, not sincerely held. What I worry about with that line of argument is going to Judge Brennan's question is, I think you're right in part. I don't think there's any question about that. But what I, are you right in whole? So if you look at Ms. Hedrington's, right, you know it very well. Correct. Okay. I think your description of it is fair, that it is the way she, but then as it proceeds, and when you incorporate the appeal, by its terms that my body, my choice, you know, all that, it gets linked to religion. Does it not? It never gets linked, Your Honor. It never gets linked. They try to tie this back to the specifics of their requests. So, for instance, in Ms. Hedrington's appeal submission, she states, God is my creator, he created me upon conception and designed my body and immune system in the womb. The district court got this right. The specifics that they talk about in each instance, the appellants, are medical and personal. When they move into the religious aspect or the religious side of things, they speak in generalities. There is never a link. And I'll give you another example of that, Your Honor. I believe it was Ms. Boubet who attached the Catholic catechism to her submission. And it says, I can act morally in my conscience as I see fit, and I'm enjoined or precluded from doing evil. But there's never a link between why the COVID vaccine and the employment requirement of receiving the vaccine is somehow evil. There's never a link between the two. Well, go to Ms. Hedrington's, right? I think one thing we've got to be very careful about is reading these email submissions or these submissions. We've got to be careful about reading them like income tax regulations. Your Honor, her original submission or her appeal? Her appeal. Okay. She says in there, after everything that you focused on, and I understand why you're focused on it. She says, that is not what God desires for me. I think the only thing that that can refer to is what she's talking about, getting vaccinated. She says, accepting this vaccine goes against my deeply held trust in God. It just seems on its face that it's religiously grounded in part. In getting back to Ashcroft to do this on a specific context analysis, we have to analyze this based on common sense and judicial experience. I would take the concept that the court just cited, and you have to step back and look at the overall intent of what this individual. We also have Rule 8A, and this is 12B6. We've got to view it in light most favorable to the pleader, and that's the plaintiffs here. And you're asking us, it seems to me, to look at it from the perspective of a summary judgment determination. Well, I think one indication of why this is a perfect 12B6 motion, as you can see, if you go back in the complaint, what the appellant's counsel tries to do is buttress some of these arguments. So, in other words, there is a citation in the complaint that there was an objection based on abortion and fetal cells. That was never included in the original exemption request. The reason for that is they're concerned that this is a 12B6. The most important aspect that we have to consider is the actual exemption requests and appeals. This is a unique situation. Most of the time, you're looking in the four corners of the complaint for a 12B6. Well, they can't retroactively change what those submissions were, and that's why this is a very, very unique situation. Did the hospital prohibit them from asserting the fetal stem cell rationale? I'm sorry, Your Honor? Did the hospital prohibit its employees from relying on the fetal stem cell rationale for requesting a religious exemption? They did not. I was nowhere in the instructions for filling out a religious exemption form. I'm just looking at this is the appendix that the appellant submitted, Appendix 18, right? They include the guidance. It's called guidance, not restrictions that Aspira share with everybody. Applicants are encouraged to do the following guidance. This may result in a denial. The important part is drawing a link between the sincerely held religious belief and the conflict. And what did the guidance say about the fetal stem cell rationale for religious exemption requests? So I'll read it. It says misinformation such as microchip, magnets, DNA, altering technology, use of animal cells or tissue, and vaccine developments, the presence of fetal cells or tissues in the vaccine. Calling that misinformation? Correct. Guidance, but calling it misinformation. And Your Honor, it might not. This was a world of COVID where we were trying to figure out. We were trying to fly the ship or fly the airplane while building. Understood. Understood. Your Honor is correct. The reason we check for religiosity and sincerity in any of these religious discrimination claims, whether they arise under Title VII or RFRA or VOLUPA or the First Amendment's Free Exercise Clause, those are the legal sources that animate these claims. The reason we test for religiosity and sincerity, and it's a light-touch test necessarily because we can't look behind the religious belief and examine it, certainly not for truth and not even for consistency with some religious doctrine. That's strictly prohibited by the Supreme Court's jurisprudence in this area. We test for religiosity and sincerity to weed out sham claims. And so to uphold the district court's decision in this case, we would have to say that on the face of these exemption requests, this is a sham claim. What's your best argument for that conclusion? Your Honor, I wouldn't necessarily conclude that you would have to call it a sham claim. I would say you look at the exemptions themselves and you look at what they are based on. Both in the original exemption request and the appeals, they start and they end with the basis of a personal or medical decision. In the request that was at issue in the Adieye case, the employee's request for time off to go to his home country for purposes of funeral rites for his father, it was the religious components of that were highly generalized. Not tied to scripture or catechism, highly generalized, loosely related to some form of Christianity and the traditions and customs of his village in Africa. If that was good enough to survive 12 v. 6, why aren't these exemption requests good enough to survive 12 v. 6? Because there wasn't the counterbalance of on its face personal and medical beliefs. It was generalized in Adieye, but there wasn't that counterbalance. I'm not sure I understand that answer. What do you mean by counterbalance? You have a tension between the personal, medical, and the religious. In that case, there was a tension between filial responsibility and the religious demands. Same kind of tension. A non-religious explanation for the request and a religious explanation for the request. In this case, I believe the balance is on the side of personal and medical. In that case, it was non-religious. Except that was a 12 v. 6, and we reversed and said, is this for a jury to decide? Why would that not be the case here? I'm sorry? Why would that not be the case here? Why is the court striking the balance instead of a jury? Because it's so obvious here that it's a personal medical belief. In this instance, the generality is the religious. In this case, they're talking about the efficiency, the lack of research on the vaccines, and that's where the focus is. Thank you very much. Thank you. I appreciate it. Mr. Erickson, you had run out of time. I'll give you an extra minute in rebuttal. Okay. Your Honor, everything that he's discussing, weighing, things of that nature, those are all factual inquiries that are completely inappropriate in Rule 12. I would like to direct you all to the EEOC's brief that in the Keele v. Ringhofer v. Mayo Clinic case, pages 11 through 14, the EEOC goes over exhaustively how the fact that secular reasons intertwine with religious reasons don't invalidate the religious exemption request. Mr. Erickson, I appreciate your point. That's the 8th Circuit case that's pending, right? That's correct. Okay. Can I ask you a procedural question? Yes. Okay. Let's suppose that you're correct, that what's been stated here is sufficient, okay, to have lodged a religious objection. In the litigation, wouldn't the next procedural – it would mean that the complaint is adequate, which effectively is incorporating or drawing upon the exemption request that were submitted. Then the case would proceed to summary judgment, would it not? That is correct. Okay. And at summary judgment, it may be the case that the court determines that the claim is made out of prima facie case. And so the way Title VII is working here, it's kind of the focus is then shifting over to the employer, right, to show that the religious exemption cannot be reasonably accommodated without the imposition of an undue burden. Would that become the next relevant inquiry in the litigation? One hundred percent, Your Honor. And as you all know, under Groff v. DeJoy, the standard is significant hardship. Right. So, for example – I'm making this up, okay? Aspirus could come in and say, for a surgical nurse that works with acutely ill patients, in our medical judgment for the health and safety of both our patients and our employees, we are requiring a vaccine. Okay? And then that's the issue that would get joined at that point, right? I'm not trying to litigate it here. One hundred percent, Your Honor. And obviously we pled in our complaint that at the time of the vaccine mandate, the CDC had already found that Delta was the dominant variant and that with regard to Delta infection, the viral loads for the vaccinated and unvaccinated were identical. Okay, yeah. I just want to make sure that we understand that once this issue is – if this issue can get resolved – and this is a hard question. If this issue can get resolved, litigation just moves forward on the track that it would in any other civil case and we just move to the next relevant question and you all do discovery and hash it out. One hundred percent. And the difficulty, the reason why they cite no circuit court cases, the only circuit court cases that they're citing are in favor of dismissal at the Rule 12 stage, are cases related to the Church of Raw Vegetables, the Church of Marijuana, and a made-up religion. All the cases that cite to Rule 12 dismissals at this stage, those are the cases. These are not – these are Christians, Your Honors. These are Christians and Catholics. These are established religions and the Eighth Circuit found that the Africa analysis just completely is thrown out when you're dealing with Christians because it's just – it's an established religion. Everyone knows. And so then when they plead that their Christian or Catholic faith prohibits vaccination, which happened here, I mean, Ms. Bube said, I am following my conscience in refusing the COVID vaccine. According to the Catholic Church, I am required to follow my judgment of conscience. That can't be any more clear. Great. You're going to have to wrap up. Your time has expired. Thank you, Your Honors. Thank you. Obviously, we would request that the district court be reversed. Thank you. Our thanks to both counsel. The case is taken under advisement. And our final case this morning.